AUSTIN L. McCARTHY, APPELLANT, v. BOARD OF TRUST-
EES OF THE PUBLIC EMPLOYEES' RETIREMENT SYS-
TEM OF NEW JERSEY, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 13, 1964—Decided December 8, 1964.

Before Judges GAULKIN, FOLEY and COLLESTER.

*Mr. Robert S. Miller* argued the cause for appellant.

*Mr. Richard Newman,* Deputy Attorney General, argued the cause for respondent (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

GAULKIN, S. J. A. D. The Board of Trustees of the Public Employees' Retirement System (hereafter Board) refused to pay to Austin L. McCarthy (hereafter Austin) death benefits which Austin claims are payable to him by virtue of the death of his brother Frank V. McCarthy (hereafter Frank), and Austin appeals.

The facts are stipulated. Frank was employed by Highland Park for over 30 years, and in 1955 he was superintendent of streets. In January of that year he became a member of the Public Employees' Retirement System under the provisions of *L.* 1954, *c.* 84 (hereafter *chapter* 84). In his application for membership Frank named Austin as beneficiary and, in the event Austin did not survive him, Eleanor R. Sabino. Under *section* 41(c) of said *chapter* 84 his membership entitled his beneficiary to

"(1) His accumulated deductions at the time of death, together with regular interest; and (2) An amount equal to 1½ times the compensation received by [him] in the last year of creditable service."

It is agreed that (2) was "noncontributory"—*i. e., section* 24 of said *chapter* 84 provided that this benefit was to be paid out of a "contingent reserve fund" made up entirely of money contributed by the State. *Section* 57 of said *chapter* 84 per-

mitted a member to buy additional "contributory" death benefits, but Frank did not elect to buy any. *Section* 28 provided that such additional contributory death benefits were to be paid to the beneficiaries of members who elected to buy them out of a "members' death benefit fund" made up of the contributions of such members.

Thereafter *L.* 1955, *c.* 214 (hereafter *chapter* 214) was passed. *Section* 1 of said act provided that the Board "is hereby authorized * * * to purchase * * * a policy or policies of group life insurance to provide for the benefits specified in section 41 * * * and 57 of chapter 84 of the laws of 1954." *Section* 4 of *chapter* 214 provided that the premiums for the coverage of the noncontributory death benefits were to be "paid from the contingent reserve fund established by section 24 of chapter 84 of the laws of 1954," while the premiums for the "optional contributory death benefits * * * shall be paid from the members' death benefit fund established by section 28 of chapter 84 * * *."

*Section* 5 of said *chapter* 214 provided that "each member selecting the additional death benefit coverage shall agree to the deduction of a percentage of his compensation" to pay for it. *Section* 6 provided that the group policies must contain the conversion privileges "prescribed by the law" relating to group life insurance. (See *N. J. S. A.* 17:34–31. No such benefits were obtainable under *chapter* 84.) *Sections* 7 and 8 of *chapter* 214 provided, as far as is here pertinent:

"7. Benefits under such group policy or policies shall be paid by the company to such person, if living, as the member shall have nominated by written designation duly executed and filed with the insurance company through the board of trustees, otherwise to the executors or administrators of the member's estate; except that if the board of trustees accepts from the member during his lifetime a request directing that the retirement system rather than the insurance company make payment of any death benefit in equal annual installments over a period of years or as a life annuity and such request is effective upon his death, or if the board of trustees accepts from a beneficiary to whom payment would otherwise be made by the insurance company in one sum a similar request for payment by the retirement system in equal annual installments over a period of years

or as a life annuity, the insurance company shall make payment of the death benefit to which such request for payment pertains in one sum directly to the retirement system, and the retirement system shall thereupon make payment to the beneficiary in the manner directed by the member or the beneficiary as the case may be, and except, further, that if a member dies in active service as a result of accident and claim is made and allowed under section 49 of chapter 84 of the laws of 1954, the death benefit payable under the policy in such case, exclusive of any additional death benefit provided by section 57 of said chapter, shall, in lieu of being paid as aforesaid be paid to the retirement system to be credited to the contingent reserve fund established by section 24 of chapter 84 of the laws of 1954 and paid therefrom in accordance with said section 24. A member may file with the insurance company through the board of trustees and alter from time to time during his lifetime, as desired, a duly attested written nomination of his payee for the death benefit.

8. * * * Any arrangement for payment under the group policy to a beneficiary * * * shall be in lieu of that provided by sections 41 * * * and 57 of chapter 84 of the laws of 1954."

The Board did arrange to purchase a policy of group insurance from the Prudential Insurance Company, covering the contributory as well as the noncontributory benefits. On October 4, 1956 Frank signed a card entitled "Enrollment Card State of New Jersey Group Life Insurance Plan." In it he checked the first of the two following squares:

"☒ I wish to enroll for the full amount of life insurance for which I am eligible and I hereby authorize my employer to deduct from my wages the contributions required of me for the contributory insurance.

☐ I wish to enroll for the free life insurance only and I understand that my right to enroll for additional contributory insurance will expire one year from the date of my eligibility for contributory insurance.

Frank V. McCarthy

Oct 4/56 Date Signature of Employee"

The card contained no space for a witness, nor was there anything in it to suggest that attestation was necessary.

This enrolled Frank for the noncontributory benefit of 1½ times his salary and the contributory benefit of ½ his salary. On this card he named Mary A. Hefferman and said Eleanor

R. Sabino jointly as his beneficiaries. He made no mention of Austin.

The Prudential issued its policy on December 1, 1956. On August 9, 1957 Frank died. He was then earning $6,300 per year. The Prudential paid to the two named beneficiaries the benefits due under the policy, totalling $12,600. The Board tendered to Austin the "accumulated deductions at the time of death together with regular interest," mentioned above as being one of the benefits due under *section* 41(c) of *chapter* 84 of the *Laws of* 1954. This amounted to $545.22. Austin rejected it.

Austin's argument is based on *sections* 41(c) and (d) of *chapter* 84, which were in force when Frank became a member of the retirement system. 41(c) provided that the original designation of beneficiaries was to be "by written designation duly executed" and filed with the Board. 41(d) provided:

"A member may file with the board of trustees and alter from time to time during his lifetime, as desired, a duly attested written *new* nomination of the payee of the death benefit *provided under this section.* * * *" (Emphasis ours)

*Section* 57 of *chapter* 84 (relating to optional contributory death benefits) also provided for the nomination of beneficiaries "by written designation duly executed and filed with the board of trustees," and also said:

"f. A member selecting the additional death benefit coverage *under this section* may file with the board of trustees, and alter from time to time during his lifetime, as desired, a duly attested, written *new* nomination of the payee of the death benefit provided under this section. * * *" (Emphasis ours)

Austin argues that when Frank named him beneficiary, he obtained a vested right of which he could be divested only in the fashion specified in said *sections* 41 and 57—that is, by a writing "duly attested"; the "Enrollment Card" was not witnessed or acknowledged, and so was not "duly attested"; he therefore concludes he is entitled to all death benefits or,

at least, to the noncontributory $1\frac{1}{2}$ times Frank's annual salary ($6,300 per annum) provided for by section 41(c) of said *chapter* 84.

The Board answers that Frank's designation of beneficiaries under the newly instituted group life insurance plan was made in accordance with the express provisions of *section 7* of said *chapter* 214, (*N. J. S. A.* 43:15A–94) ; that it was in lieu of the benefits afforded by *chapter* 84, and that it constituted a new and original designation under *chapter* 214 and not a change of beneficiary under *chapter* 84. We agree.

Although the title of *chapter* 214 termed it a supplement to *chapter* 84, *chapter* 214 brought into the law something new —group insurance. We need not pause to consider whether a member of the system had the right to refuse the group insurance and to insist upon the payment of benefits by the Board itself pursuant to *chapter* 84, for here Frank did request the group insurance.

As we have said, when Frank enrolled for the group insurance, *section 7* of *chapter* 214 provided:

"7. Benefits under such group policy or policies shall be paid by the company to such person, if living, as the member shall have nominated by written designation duly executed and filed with the insurance company through the board of trustees, otherwise to the executors or administrators of the member's estate; \* \* \*."

It will be noted that this language, as to the designation of a beneficiary, is almost identical with *section* 41(c) of *chapter* 84, quoted above.

And said *section 7* of *chapter* 214 concluded:

"\* \* \* A member may file with the insurance company through the board of trustees and alter from time to time during his lifetime, as desired, a duly attested written nomination of his payee for the death benefit."

Plaintiff admits that under said *section* 41(c) of *chapter* 84 the original designation of beneficiaries did not have to be acknowledged or attested. However, says plaintiff, under the

language of *section* 7 of *chapter* 214 even an original designation of a beneficiary of the group insurance must be "duly attested," and here Frank's enrollment for group insurance was not attested at all. If Frank's designation of the beneficiaries of the group insurance were to fail for this reason, the benefits would not be payable to Austin but to Frank's estate. However, since Austin says that he is the administrator of Frank's estate (although the record does not show it, and he does not sue in that capacity) we shall pass upon this contention.

Plaintiff predicates his argument that *section* 7 of *chapter* 214 requires that the original designation be duly attested upon the fact that the word "new," which appears in *sections* 41(d) and 57(f) of *chapter* 84, is omitted from the last sentence, above quoted, of *section* 7 of *chapter* 214. Plaintiff argues that the word "new" was deliberately omitted by the Legislature with the intention that all designations of beneficiaries of the group insurance, original or subsequent, were to be "duly attested."

We disagree. If that is what the Legislature intended to do, it easily could have used the word "attested" instead of "executed" in the first sentence. Instead, as to original designations the Legislature used the same language in *section* 7 of *chapter* 214 as it used in many other comparable *sections* of the statutes. Compare, for example, *N. J. S. A.* 43:15A–45 (c), 46(c), 48(d). In short, we hold that the last sentence of *section* 7 of *chapter* 214 (*N. J. S. A.* 43:15A–94) does not apply to the original application for group insurance, which need not be attested, but only to later designations, in those cases in which no person had been named as a beneficiary in the original enrollment, or where the member wishes to change the beneficiary.

As we have said, *section* 8 of *chapter* 214 (*N. J. S. A.* 43:15A–95) provided that "Any arrangement for payment under the group policy to a beneficiary * * * shall be in lieu of that provided by sections 41 * * * and 57 of chapter 84 * * *." As to so much of the "enrollment card" as related

to the noncontributory life insurance, Austin's arguments plainly do not apply, and to that insurance he obviously has no claim. When Frank applied for the contributory insurance, it was a new application for a new contract of coverage, providing new benefits. As to that new coverage, there was no change of beneficiary and *section* 7 of *chapter* 214 alone governed the validity of Frank's designation of beneficiaries.

We hold that, as to the noncontributory benefits as well, there was an election by Frank to accept the new and broader benefits provided by *chapter* 214 and the group policy issued thereunder; that those benefits were "in lieu of" the benefits provided by *chapter* 84, and that therefore there was no change of beneficiary of the *chapter* 84 death benefits but a new tripartite arrangement between Frank on the one side and the Board and the insurance company on the other, under *chapter* 214. *Cf. Woehr v. Travelers Insurance Co.*, 134 *N. J. Eq.* 38, 45 (*Ch.* 1943); *Spina v. Consolidated Police, etc., Pension Fund Com.*, 41 *N. J.* 391 (1964).

The judgment is affirmed.